Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI, LLP**
Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                                                  Chapter 11
BRUNO HOLDINGS, LLC,                                                 Case No. 16-22738 (RDD)

                                         Debtor.
------------------------------------------------------------x

## DEBTOR'S MOTION FOR AN ORDER, PURSUANT TO 11 U.S.C. §§105(a) AND 363(b), (f) AND (m) AND FED. R. BANKR. P. 6004, AUTHORIZING AND APPROVING SALE OF REAL PROPERTY, FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES AND INTERESTS, SUBJECT TO HIGHER AND BETTER OFFERS, AND GRANTING RELATED RELIEF

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Bruno Holdings, LLC, the debtor and debtor-in-possession herein (the "Debtor"), as and for its motion (the "Motion") for entry of an Order, pursuant to §§105(a) and 363(b), (f) and (m) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 6004-1, authorizing and approving the Debtor's proposed sale of certain real property located at 2 South Street, Suffern, New York (Block 1, Lots 46 and 48) (the "Property"), free and clear of all liens, encumbrances and interest, to Stephan Depay and Carmen Depay (together, the "Proposed Purchaser"), for the purchase price of $1,150,000, pursuant to the terms of a certain proposed Contract of Sale, a copy of which is attached hereto as *Exhibit "A"* (the "Contract"), but subject to any higher or better offers, and granting related relief, respectfully represents and alleges as follows:

## BACKGROUND

1. On May 27, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with this Court and an Order for Relief was simultaneously entered. As of the Petition Date, the Debtor was authorized to remain in possession of its property and operate its business as a debtor-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code. No trustee, custodian or receiver was appointed, and no committee of creditors was formed.

2. The Debtor is the owner of certain real property located at 2 South Street, Suffern, New York 10901 (Block 1, Lots 46 and 48) (the "Property"). The Property consists of a one story commercial building, approximately 10,000 square feet in size, with four (4) separate commercial units. The Debtor is currently a party to the following three (3) leases concerning the Property:

> Tenant:         Joseph Orlando & Car Care Plus, Inc. d/b/a Crystal Car Wash
> Lease Term:   June 1, 2012 through May 31, 2036
> Monthly Rent: $4,800.00
>
> Tenant:         Buckwild Towing
> Lease Term:   August 1, 2013 through December 31, 2021
> Monthly Rent: $2,475.00
>
> Tenant:         Rockiss Estrada Agency, LP
> Lease Term:   February 1, 2016 through January 31, 2020
> Monthly Rent: $1,840.00

3. The Property is presently encumbered by, at a minimum: (a) three (3) mortgages held by Sterling National Bank ("Sterling") with regard to which Sterling has filed proofs of claim in the Debtor's case (Claim Nos. 3, 4 and 5) in the total amount of $770,655.50; and (b) a judgment originally entered in favor of MGL Building Services of Rockland, Inc. but now held by

Brett Conklin with regard to which a proof of claim was filed in the Debtor's case (Claim No. 6) in the amount of $687,069.50.

4. The Debtor will shortly be filing a proposed chapter 11 plan of reorganization (the "Plan") which will be implemented and funded by way of a post-confirmation sale of the Property to the Proposed Purchaser or to the successful bidder at an auction to be conducted in accordance with bidding and noticing procedures established by an Order of this Court.

### THE PROPOSED SALE OF THE PROPERTY

5. Both prior to and after the Petition Date, the Debtor, with the assistance of real estate brokers, has been working to find a suitable purchaser for the Property. The Property was initially listed with an asking price of $1,400,000 which was reduced in late November 2017 to $1,350,000. While the Debtor received some interest from potential purchasers, no offers at or near the Debtor's asking price were received.

6. In or about early 2018, the Debtor entered into discussions with a potential purchaser introduced by Delaney Realty Inc. (which was retained as the Debtor's real estate broker pursuant to an Order of this Court) concerning a sale of the Property for $1,175,000. The Debtor's counsel promptly prepared a proposed contract of sale for review by the potential purchaser and its counsel. However, the potential purchaser was a church and, as such, its purchase of the Property (as a religious corporation) would require, among other things, the approval of the church's members, the New York State Attorney General and the New York State Supreme Court, all of which could potentially delay a closing. Additionally, it became evident that the potential purchaser did not have sufficient funds to fully pay the purchase price at closing and, thus, requested that the Debtor agree to accept payment of a significant portion of the purchase price over time. As a result of the foregoing, the contract of sale was not immediately executed.

3

7. In the interim, the Debtor was contacted by the Proposed Purchaser (who is the principal of Joseph Orlando & Car Care Plus, Inc. d/b/a Crystal Car Wash, the Property's major tenant) (the "Car Wash")) concerning a possible acquisition of the Property. Arms-length negotiations with the assistance of independent counsel ensued as to mutually agreeable terms of a sale of the Property. The Debtor and the Proposed Purchaser subsequently entered into the Contract.

8. Without limiting the detail provided therein, the material terms of the Contract can be summarized as follows:

(a) The Proposed Purchaser will pay the sum of $1,150,000 in consideration of the Debtor's conveyance of its interests in the Property free and clear of all liens and encumbrances;

(b) The proposed sale is subject to the Proposed Purchaser obtaining a mortgage from an institutional lender of $1,035,000 for a term of at least twenty-five (25) years within sixty (60) days of the Contract being fully executed;

(c) The proposed sale is not subject to any further conditions other than good and marketable title;

(d) The Property is being sold "As Is" and subject to all existing leases and tenancies;

(e) The Proposed Purchaser has remitted a good faith deposit in the amount of $115,000 which is currently being held in escrow by the Debtor's counsel and will be applied to the amounts payable at closing;

(f) The closing will take place within ten (10) days of the entry of an Order by this Court approving the sale; and

(g) No brokerage commission will be paid in connection with the sale.

8. The Debtor believes that the Proposed Purchaser's offer for the Property upon the terms stated in the Contract is fair and reasonable and that approval thereof would be appropriate under the circumstances. In this regard, the Debtor believes that the proposed sale of the Property to

4

the Proposed Purchaser for $1,150,000 is more beneficial to the Debtor and its creditors than the $1,175,000 offer which the Debtor had received from the church because, among other things, the Debtor will not have to pay any broker's fee under the Contract with the Proposed Purchaser and the Proposed Purchaser is proposing to pay the full purchase price much earlier than what had been proposed by the church.

9. The Proposed Purchaser has no affiliation with the Debtor or any insider of the Debtor other than as the principal of the Car Wash which has been a tenant of the Debtor since 2012. Other than the Debtor and the Proposed Purchaser, no other individuals or entities stand to benefit from the proposed sale. There is no prejudicial connection or affiliation between the Debtor and the Proposed Purchaser and the proposed sale was fully and adequately negotiated with the assistance of independent counsel. Thus, the Debtor avers that the proposed sale of the Property to the Proposed Purchaser is at arms-length.

10. The Proposed Purchaser's $1,150,000 offer for the Property remains subject to any higher or better offers. As such, simultaneously with its filing of this Motion, the Debtor is filing a separate motion (the "Bid Procedures Motion") with this Court seeking the entry of an Order, pursuant to Bankruptcy Rules 2002, 6004 and 9006 and Local Bankruptcy Rule 6004-1, establishing bidding and noticing procedures, and scheduling auction and hearing dates, in connection with the Debtor's proposed sale of the Property.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409. The statutory

predicates for the relief sought herein are §§105(a) and 363(b), (f) and (m) of the Bankruptcy Code and Bankruptcy Rule 6004.

## RELIEF REQUESTED

12. By this Motion, the Debtor seeks this Court's authorization and approval of its proposed sale of the Property to the Proposed Purchaser upon the terms of the Contract.

13. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate..." In order to approve the sale of estate property outside of the ordinary course of business, the bankruptcy judge must "find from the evidence presented before him at the hearing a good reason to grant such an application." Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F. 2d 1063, 1071 (2d Cir. 1983); see also Stephens Indus. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) ("[B]ankruptcy court can authorize a sale of all of a Chapter 11 debtor's assets under §363(b)(1) when a sound business purpose dictates such action."). "[T]he standards for allowance of a pre-confirmation sale pursuant to §363(b)(1) are that the sale proponent must show not only that there is both a 'sound business purpose' why the sale should be allowed to take place outside of the ordinary course...but that the proponent must also make a strong showing that all of the requirements for any §363(b)(1) sale are met." In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc., 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987) (citations omitted). "These elements are the provision of accurate and reasonable notice; a showing that the price to be paid is adequate, *i.e.*, fair and reasonable; and establishing that 'good faith', *i.e.*, the absence of any lucrative deals with insiders, is present." Id. It is clear that a debtor's showing of a sound business justification need not be unduly exhaustive but, rather, a debtor is "simply required to

6

justify the proposed disposition with sound business reason." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D.Ohio 1984).

14. The Debtor respectfully submits that the proposed sale of the Property under the terms of the Contract represents a sound exercise of business judgment by the Debtor and that consummation thereof would be in the best interests of the estate. As discussed above, both prior to and after the Petition Date, the Debtor had been actively soliciting offers for the Property. The Debtor believes that the amounts proposed to be paid under the Contract represent the reasonable value of the Property under the circumstances, including the current state of the real estate market, the substantial mortgages and liens asserted against the Property and the continuing accrual of interest and other charges relating to said mortgages and liens.

15. The proposed sale represents the best possible means for the Debtor, its creditors and its estate to recover the value of the Property under the circumstances. In this regard, the proceeds of the sale of the Property will be the primary source of funding for the Plan under which the Debtor hopes to satisfy all secured claims and statutory fees and further make, at a minimum, a partial distribution on chapter 11 administrative claims. Thus, the Debtor respectfully requests that the Court approve the proposed sale of the Property to the Proposed Purchaser or such other bidder that may make a higher or better bid therefor at the auction.

16. With regard to any encumbrances against Property proposed to be sold by a debtor, §363(f) of the Bankruptcy Code provides:

> The [debtor-in-possession] may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -

7

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

17. The Debtor respectfully submits that the requirements of §363(f) are or will be satisfied as of the date that the sale of the Property closes. All liens, claims and encumbrances against the Property will be paid at closing or shall attach to the proceeds of the proposed sale.

18. Moreover, the Debtor requests that this Court find that the Proposed Purchaser (or any successful bidder) be afforded the protections provided by §363(m) of the Bankruptcy Code in connection with the proposed sale which provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b)...of this section of a sale...of property does not affect the validity of a sale...under such authorization to an entity that purchased...such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale...were stayed pending appeal.

Although the Bankruptcy Code does not define "good faith purchaser", the Court of Appeals for the Second Circuit has stated that good faith is shown by the integrity of a purchaser's conduct during the course of the sale proceedings. Licensing by Paolo v. Sinatra (In re Gucci), 126 F.3d 380, 390 (2d Cir. 1997). Respectfully, and as required by §363(m) of the Bankruptcy Code, the Debtor and the Proposed Purchaser have acted in good faith in negotiating the proposed sale.

## CONCLUSION

19. Based upon the foregoing, it is respectfully requested that this Motion be granted in its entirety along with such other and further relief as may be just and proper.

Dated: New York, New York
      June 5, 2018

**PICK & ZABICKI LLP**
Counsel to the Debtor

By: _____
Eric C. Zabicki
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000